66764, 66765. HALL et al. v. RICHARDSON HOMES, INC. et al.; and vice versa.

QUILLIAN, Presiding Judge.

These are appeals from a grant and a denial of summary judgments in an action to recover damages arising from a defective

septic tank system.

In June 1975 defendant-appellee Citizens & Southern Financial Corporation (CSFC) acquired title to a subdivision named Brandy Wine on the River. An engineering firm, Horlbeck & Associates, had laid out the subdivision for the prior owners and CSFC employed them to continue this work. Horlbeck performed soil percolation tests on the property which showed that it was suitable for the installation of septic tank sewage disposal systems. The initial plat of the subdivision was approved by the Gwinnett County Health Department and recorded in September 1975. In April 1976, the health department informed CSFC that several lots located along the Yellow River were not suitable for septic tanks due to an enlargement of the flood plain of the river, causing them to be too small to support a septic tank system. As a result, CSFC revised the plat by combining a number of lots along the river into a lesser number of larger lots, one of which was renumbered 12A. In April 1977 the health department approved the revised plat subject to the requirement that site studies be performed on several lots before a building permit would be issued, and lot 12A had this restriction. This did not invalidate the existing percolation tests or require additional such tests. In May 1977, CSFC sold lot 12A to defendant-cross appellant Richardson Homes, Inc. (Richardson), taking back a deed to secure debt as security for a construction loan to erect a house on the lot. Richardson had the required site study performed by the county health department, was issued a building permit and erected a house on the lot. A septic tank system was installed by a Richardson subcontractor in a location specified by the health department, and the completed installation was approved by the health department. In November 1977, plaintiff-appellants Hall, husband and wife, purchased the house and lot from Richardson, and moved into the house. A few months later the septic tank system began to malfunction by backing up and its effluent coming to the surface in the nitrification field. Upon the Halls' complaints, Richardson's subcontractor enlarged and improved the nitrification field in March 1978. The problem continued, however, and in May 1980, as a result of percolation tests caused to be performed by the Halls, it was discovered that the soil on the lot did not have sufficient permeability to permit the use of a septic tank system. In February 1981, the Halls commenced this action against Richardson and CSFC alleging that they had defrauded them by selling them a house with a defective septic tank system, with knowledge that it was defective. They later also alleged that Richardson negligently installed the septic tank system. After discovery, both Richardson and CSFC moved for summary judgment. The trial court granted CSFC summary judgment and

denied it to Richardson. The Halls appeal the grant of summary judgment to CSFC and Richardson cross appeals the denial of its motion for summary judgment. The Halls move to dismiss Richardson's cross appeal as not meeting the requirements of OCGA § 5-6-34 (formerly Code Ann. § 6-701). *Held:*

1. The Halls' motion to dismiss Richardson's appeal is denied. "We hold that when a direct appeal is taken [from a grant of summary judgment], any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by the appellate court." *Southeast Ceramics, Inc. v. Klem,* 246 Ga. 294 (1), 295 (271 SE2d 199).

2. Did the trial court err in granting summary judgment to CSFC?

Although the Halls raise matters in their briefs which have not been alleged and were not considered below, we consider only the allegation of whether CSFC wilfully concealed the fact that the property was not suitable for a septic tank system.

"Appellees alleged that they were defrauded by appellants' failure to disclose certain defects in the property they were purchasing. [Cit.] Fraud, unlike negligence, breach of warranty or breach of contract, is premised upon the 'actual moral guilt' of the defrauding party. [Cit.] 'Mere concealment of [a material fact], unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element.' [Cit.] 'The element of intention to deceive is as necessary in an action based on concealment as one based on wilful misrepresentation. [Cit.] An action for fraud and deceit must [be based upon a] representation (or . . . concealment) [which] was made with the intention and purpose of deceiving the opposite party ([cit.]), and for the purpose of injuring him. [Cit.]' [Cit.] 'In all cases of deceit, knowledge of the falsehood constitutes an essential element.' [Cit.] ' "In order to recover in an action of deceit, it is indispensable that the *scienter* be . . . proved." ' [Cit.]" *Lively v. Garnick,* 160 Ga. App. 591, 592 (287 SE2d 553).

"[I]n cases of passive concealment by the seller of defective realty, we find there to be an exception to the rule of caveat emptor . . . That exception places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect [his] decision. [Cits.]" *Wilhite v. Mays,* 140 Ga. App. 816, 818 (232 SE2d 141).

In the instant case, CSFC employed the Horlbeck engineering

firm to subdivide the land into lots and determine whether they were suitable for septic tank systems. This was done and a plat finally approved which showed that lot 12A was suitable provided a site study was conducted. CSFC thereafter sold lot 12A to Richardson, and had nothing further to do with the lot other than as security for Richardson's construction loan. Richardson had the site study done by the county health department, which told Richardson where to put the septic tank system. CSFC had no involvement in the construction of the house or the installation of the septic tank system. It was not a party to the sale of the house to the Halls and did not finance their purchase. It had no knowledge of the Halls, nor they of CSFC, and presumably only knew that the property had been sold when the construction loan was satisfied.

There is uncontradicted evidence that at the time the house was sold CSFC did not know that the soil would not support a septic tank system, something which no one apparently discovered until several years later. There is evidence that CSFC had no "special knowledge" of the defect and concealed it from the Halls.

" 'On motion for summary judgment the defendant, as movant, must produce evidence which negates "at least one essential element entitling the plaintiff to recovery under every theory fairly drawn from the pleadings and evidence." [Cit.]' [Cit.]" *Moss v. Central of Ga.,* 135 Ga. App. 904, 905 (219 SE2d 593), cert. den. 425 U. S. 907 (96 SC 1501, 47 LE2d 758).

Pretermitting whether CSFC even had any privity with the Halls or any duty to disclose anything to them, as we find the evidence of record negates the essential element of knowledge of the defect in the Halls' allegation of fraud, the trial court did not err in granting summary judgment to CSFC.

CSFC filed a belated affidavit of Horlbeck which was considered on the motion over the Halls' objection. It was filed two days before the hearing on the motion. When the Halls' objection was denied the trial court asked them if they desired a continuance in order to refute the affidavit, the continuance was refused. It then took 43 more days for the trial court to make a ruling on the motion during which the Halls filed nothing in opposition to the affidavit. Under these circumstances, there was no error in considering the affidavit. *Chattahoochee Holdings v. Marshall,* 146 Ga. App. 658 (2) (247 SE2d 167); *McIntosh v. McLendon,* 162 Ga. App. 220 (1) (290 SE2d 157).

3. The denial of Richardson's motion to dismiss on the ground that service was not timely was not error, because the resolution of this issue depended upon when the statute of limitation began to run. The evidence was in dispute on whether the statute of limitation began to run in 1978 when the defect was discovered; or in 1980 when

the cause of the defect was discovered, and concealment of which was alleged as fraud.

"[W]here the actual fraud is the gravamen of the action . . . the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered." *Shipman v. Horizon Corp.,* 245 Ga. 808 (267 SE2d 244).

Thus, when the statute of limitation began to run was an issue for the jury. *Piedmont Pharmacy v. Patmore,* 144 Ga. App. 160 (3) (240 SE2d 888).

4. Did the trial court err in denying summary judgment to Richardson on the allegations of fraud and negligence?

As with CSFC, supra, we find unrebutted evidence that Richardson had no knowledge, as required in fraud, of any defect in the soil or the septic tank system. Richardson bought the lot from CSFC, after it had been platted, percolation tested, approved and recorded. Building was subject to a site study by the county health department which was performed, the layout for the septic tank system was designed by the county, and site approval given. The house was then constructed and a septic tank system installed by an independent contractor in accordance with the design of the county, and the installation was approved by the county. The affidavit of the president of Richardson, who had personally supervised the construction of the house, stated that he had no knowledge of any defect in the system. Therefore, following the same authorities we applied to CSFC, supra, we find that the trial court erred in denying summary judgment to Richardson on the issue of fraud. "[I]t is not a 'reasonable or logical' inference from the mere fact that a builder-seller has constructed a house subsequently discovered to be 'defective' that he *knowingly concealed* those defects and thereby deceived and defrauded the purchaser. [Cit.]" *Lively v. Garnick,* 160 Ga. App. 591, 594, supra. Compare, *Lodge v. Popham,* 156 Ga. App. 825 (275 SE2d 669).

As to the allegation of negligent installation, the evidence again is unrebutted that the septic tank system was installed by an independent subcontractor. If there was any negligence on the part of that subcontractor, it is not imputable to Richardson. OCGA § 51-2-4 (Code Ann. § 105-501); *St. Paul Companies v. Capitol Office Supply Co.,* 158 Ga. App. 748 (282 SE2d 205). The trial court also erred in denying summary judgment on the issue of negligence.

*Judgment affirmed in part; reversed in part. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 30, 1983 —
REHEARING DENIED OCTOBER 25, 1983 — ▆▆▆▆▆▆

*Alan Z. Eisenstein,* for appellants (case no. 66764).

*Robert D. McCallum, Jr., Anne S. Rampacek, T. Michael Tennant, Arnold Wright, Jr., J. M. Hudgins IV,* for appellees.

*Marjorie M. McCaw, Arnold Wright, Jr., J. M. Hudgins IV, T. Michael Tennant, Anne S. Rampacek, Alan L. Newman,* for appellants (case no. 66765).

*Alan Z. Eisenstein,* for appellees.